Exhibit 1

## State Court Pleadings

1.  Complaint and Demand for Jury Trial;
2.  Civil Non-Domestic Case Information Sheet;
3.  Three Writs of Summons;
4.  Plaintiff's First Set of Interrogatories to Defendants;
5.  Plaintiff's First Set of Requests for Admissions of Facts and Genuineness of Documents; and
6.  Plaintiff's First Request for Production of Documents and Things to Defendants.

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

SHIVA LOUIE       *
10 East Lee Street, #2002    *
Baltimore, Maryland 21202   *
           *
 Plaintiff       *
           *
v.            *   Case No.:
           *
LAW OFFICES OF SALLY B. GOLD   *
LLC           *
201 North Charles Street, Suite 1630   *
Baltimore, Maryland 21201    *
  Serve On:      *
  Sally B. Gold     *
  157 West Lanvale Street   *
  Baltimore Maryland 21201   *
           *
 and         *
           *
SALLY B. GOLD, INDIVIDUALLY   *
AND T/A LAW OFFICES     *
OF SALLY B. GOLD      *
201 North Charles Street, Suite 1630   *
Baltimore, Maryland 21201    *
           *
 and         *
           *
CARRIE L. POLLEY      *
201 North Charles Street, Suite 1630   *
Baltimore, Maryland 21201    *
           *
 Defendants       *
           *

FILED CIRCUIT COURT FOR BALTIMORE CITY

20 APR -7 PM 2. 13

CIVIL DIVISION.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT AND DEMAND FOR JURY TRIAL
### (Legal Malpractice)

  COMES NOW, Shiva Louie, by and through her undersigned counsel, and files this

Complaint and Demand for Jury Trial against Defendants, Law Offices of Sally B. Gold LLC,

Sally B. Gold, Individually and t/a Law Offices of Sally B. Gold, and Carrie L. Polley,

("Defendants") and respectfully states as follows:

1

## PARTIES

1.    That Plaintiff, Shiva Louie (f/k/a Shiva Louie-Sharifi), is an adult citizen and resident of Baltimore City, Maryland.

2.    That Defendant, Sally B. Gold, is an attorney actively engaged in the practice of law throughout the State of Maryland. Defendant Gold maintains the following address with the Client Protection Fund: 201 North Charles Street, Suite 1630, Baltimore, Maryland 21201.

3.    That Defendant Gold operated a law practice under an unregistered trade name of "Law Offices of Sally B. Gold," with its principal place of business located in Baltimore City Maryland.

4.    That Defendant, Law Offices of Sally B. Gold LLC, is a limited liability company incorporated under the laws of the State of Maryland, with its principal office in Baltimore City, Maryland. Law Offices of Sally B. Gold LLC is the successor-in-interest to Sally B. Gold t/a Law Offices of Sally B. Gold, in that it continued the representation of the Plaintiff without the execution of a separate retainer agreement, and its invoices reflected receipt of legal fees paid by the Plaintiff to Sally B. Gold t/a Law Offices of Sally B. Gold prior to the creation of Law Offices of Sally B. Gold LLC.

5.    That Defendant, Carrie L. Polley, is an attorney actively engaged in the practice of law throughout the State of Maryland. Defendant Polley maintains the following address with the Client Protection Fund: 201 North Charles Street, Suite 1630, Baltimore, Maryland 21201. At all times relevant here to, Defendant Polley was an agent/servant/employee of Law Offices of Sally B. Gold LLC and/or Sally B. Gold t/a Law Offices of Sally B. Gold.

## JURISDICTION AND VENUE

6.      That this Honorable Court may exercise personal jurisdiction over Defendants as they caused tortious injury in the State by acts and omissions in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. §6-103(b)(3).

7.      That venue is proper in Baltimore City as all Defendants carry on regular business in Baltimore City, the corporate Defendant maintains its principal office in the State in Baltimore City, Maryland, and there are multiple Defendants which are subject to suit in Baltimore City. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-201(a) and (b). Moreover, this litigation involves a tort action based on negligence and the cause of action arose in Baltimore City. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 6-202(8).

## BACKGROUND FACTS

8.      That Plaintiff, Shiva Louie, adopts by reference the allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

9.      That Plaintiff married Amir Sassan Sharifi ("Sassan") on or about October 8, 1993.

10.     That Plaintiff and Sassan are parents to two children, born in 2000 and 2001 respectively.

11.     That Sassan filed for limited divorce, *pro se* on August 21, 2015. *See Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502, in the Circuit Court for Baltimore City.

12.     That Plaintiff and Sassan amicably agreed to a handwritten marital settlement agreement (the "Handwritten Agreement").

13.     That, Plaintiff and Sassan presented to the Circuit Court on October 26, 2015 and presented the Handwritten Agreement to the Magistrate Judge. The Magistrate Judge reviewed

the Handwritten Agreement and instructed Plaintiff and Sassan to have a lawyer draft a precise marital settlement agreement to avoid future disputes and continued the divorce proceeding until April 11, 2016.

14.    That on or about March 11, 2016, Plaintiff contacted the Defendants and emailed Defendant Polley copies of (1) the Handwritten Agreement; (2) her marriage certificate, (3) a Microsoft Word version of the Handwritten Agreement with comments and notes correcting the names of various entities and the addresses of various pieces of real property which were misidentified in the Handwritten Agreement.

15.    That on or about March 14, 2016, Plaintiff presented to the Defendants' office, paid the initial retainer, and entered into a retainer agreement which provided: "I employee the Law Offices of Sally B. Gold … to represent me … in the dispute with my spouse…" Defendant Polley executed the agreement as an authorized agent and on behalf of the Law Offices of Sally B. Gold.

16.    That Defendant Polley drafted a formal typewritten marital settlement agreement (the "Formal Agreement" or "marital settlement agreement") which misidentified an entity that owned a shopping center in Ellicott City, Maryland in which Sassan held a $1,200,000.00 interest, despite the Plaintiff having emailed the correct information to Defendant Polley on March 11, 2016.

17.    That on or about April 8, 2016, Plaintiff and Sassan presented to the Defendants' office and executed the Formal Agreement with minor changes suggested by Sassan. Defendant Polley told the Plaintiff that the Formal Agreement was solid and would stand irrespective of whether Plaintiff and Sassan reconciled.

18.    That as of the date that Plaintiff executed the Formal Agreement, she trusted the Defendants and reasonably expected that they had competently investigated the identity of the

4

entity that owned the shopping center and accurately drafted the Formal Agreement to protect the Plaintiff's interests. In fact, during their first meeting, Plaintiff witnessed Defendant Polley use the google maps to locate and identify the shopping center. Defendant Polley told the Plaintiff that she had access to the land records as well.

19.     That on April 11, 2016 Plaintiff and Sassan presented the Formal Agreement to Magistrate Judge Hope Tipton, and the Court granted a Limited Divorce on May 9, 2016.

20.     That over one-year later, on or about May 17, 2027, Sassan reopened the case to seek an absolute divorce.

21.     That on or about September 6, 2017, the Court granted the Parties' an Absolute Divorce and ordered that the Formal Agreement be incorporated, but not merged, into the Judgment of Absolute Divorce.

22.     That the amicable relationship between Plaintiff and Sassan deteriorated and Sassan failed to pay for his children's private school tuition as required under the Formal Agreement. As a result, Plaintiff returned the Defendants for assistance in enforcing the Formal Agreement.

23.     That despite the creation of Law Offices of Sally B. Gold LLC in July 2017, Defendants did not have the Plaintiff execute a new retainer agreement when she sought the Defendants' assistance in enforcing Sassan's obligation to pay for the children's private school tuition thereafter.

24.     That on or about March 29, 2018, Defendants filed a Petition to Enforce Marital Settlement Agreement and/or Petition for Contempt. Despite its title, the Petition only requested that Sassan be held in contempt for his failure to pay the cost of the children's private school tuition.

5

25.     That Sassan hired Barbara Brown, Esquire to represent him with respect to the contempt proceeding. Ms. Brown reportedly advised Sassan that there were various defects in the marital settlement agreement (*i.e.* misnomer of corporate entities, misidentification of an address) which relieved him of various obligations under the marital settlement agreement, such that he was not required to make payments to the Plaintiff from his interest in a shopping center in Ellicott City. With this knowledge, Sassan promptly ceased all payments to the Plaintiff in or around June of 2018.Sassan also filed a Motion to Revise Judgment and Rescind Marital Settlement Agreement.

26.     That Defendant Polley informed the Plaintiff that Defendant Gold and Ms. Brown were very close friends.  Defendants' friendship with Sassan's counsel, coupled with the Defendants' apparent disinterest in her case, caused her to seek out and hire new counsel.  In or around June 2018, Plaintiff retained Steven M. Caplan, Esquire to represent her in the contempt proceeding.

27.     That at or about the time that Plaintiff retained Mr. Caplan and Sassan filed his Motion to Revise Judgment and Rescind Marital Settlement Agreement, the Plaintiff first became aware that there was a defect in the drafting of the Formal Agreement.

### The Ellicott City Shopping Center

28.     That Plaintiff inherited approximately $500,000 from her parents during the marriage.  Sassan invested these funds in a business venture by purchasing an interest in 9191 LLC, a limited liability company which purchased, owned and leased commercial space in a retail shopping center located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043.

29.     That each month 9191 LLC issued distributions to Sassan and Plaintiff during their marriage.

6

30.     That in the Handwritten Agreement, the shopping center's address was misidentified as "9195 Baltimore National Pike" instead of "9191 Baltimore National Pike." The entity which owned and leased the property was misidentified as "Azar."

31.     That Plaintiff provided the correct name of the entity "9191 LLC" and corrected address on March 11, 2016 via email to Defendant Polley.

32.     That despite receiving the corrected information, Defendants drafted the Formal Agreement so as to misidentify the property as "9195 Baltimore National Pike" and listed the owner as "Azar, BK, Inc." an entity that never owned the property and which was dissolved in 2009.

33.     That Sassan initially forwarded all monthly distributions from the shopping center to the Plaintiff, and Sassan generally did so from April 2016 through June 2018. Mr. Caplan served a subpoena and received a payment history from Ahmad Kabiryousefi, the majority interest holder and managing member of 9191 LLC, in or around July 2018, in preparation for the contempt proceeding. On average, Sassan received about $5,000 per month, and on information and belief, Sassan continues to receive a comparable amount per month, if not more.

34.     That when Sassan discovered the misnomer of the entity that owned the shopping center and the misidentification of the address, he ceased forwarding all payments to the Plaintiff in or around June 2018.

35.     That the Formal Agreement provided that Sassan shall sell his interest in Azar, BK, Inc., for fair market value, and that the proceeds would be applied as follows: (1) payment of the mortgage on the Marital Home at 10 East Lee Street Baltimore Maryland; (2) payment of the second mortgage on the Marital Home; (3) payment of any credit card debts; and (4) the remainder would be split 50/50 between the spouses.

7

36.     That the Formal Agreement provided no timetable for Sassan to sell the interest, and even if he sold his interest in 9191 LLC, he would have no obligation to apply the proceeds as set forth in the marital agreement because of the misidentification of the entity.

37.     That Ahmad Kabiryousefi, the majority interest holder and managing member of 9191 LLC, informed Sassan and the Plaintiff that Sassan's interest was worth about $1,200,000.00.

38.     That the Defendants breached the applicable standard of care by failing to conduct a review of information publicly available through the State Department of Assessments and Taxation website, failing to confirm that they were identifying the correct entity, failing to read the Plaintiff's email regarding the correct identification of the entity, failing to confirm the location of the shopping center, and failing to include any mechanism to force Sassan to sell his interest in the shopping center entity. Had they done so, the Parties would have executed a Formal Agreement containing correct information and enforceable language.

39.     That, as a direct and proximate result of the Defendants' negligence in failing to identify the shopping center and 9191 LLC properly, the Plaintiff has forever lost the value of the monthly disbursements from 9191 LLC, and if Sassan sells his interest, she has forever lost her share of the proceeds.

40.     That Sassan has represented that he will never sell his interest in the 9191 LLC, and as a direct and proximate result of the Defendants' negligence, the Plaintiff has lost approximately at least $5,000 per month for the remainder of Sassan's life.

### The Marital Home

41.     That the Marital Home was located at 10 East Lee Street, # 2002, Baltimore, Maryland 21202, and consisted of two condominium units which had been combined into one larger unit.

42.    That, as of the time of the divorce, the Marital Home was subject to a mortgage in the amount of approximately $400,000.00 held by Wells Fargo.

43.    That the Formal Agreement drafted by the Defendants provided that the Plaintiff would be solely responsible for all bills and expenses associated with the Marital Home, including its mortgage, which was to be offset with all the income from the shopping center.

44.    That the Formal Agreement provided that the proceeds of Sassan's sale of his interest in the shopping center would be applied to the $400,000 first mortgage on the Marital Home, then to a second mortgage. However, there was no second mortgage on the home; instead, the purported "second mortgage" was actually an unsecured line of credit in Sassan's name only. Plaintiff was unaware of the amount of the line of credit from Bank of America, NA, and accepted Sassan's representation that the debt was attached to the Marital Home. However, a review of the land records would have revealed that no such mortgage was recorded as of April 2016 when the Defendants drafted the Formal Agreement.

45.    That the Formal Agreement did not require that Sassan execute a quitclaim deed contemporaneously with his execution of the Formal Agreement. Following the entry of the judgment of absolute divorce, Plaintiff and Sassan's tenancy by the entirety was severed and reverted to a tenancy in common. In or around February 11, 2019, Bank of America, NA recorded a deed of trust against Sassan's interest in the Marital Home. Sassan refused to execute a quitclaim deed until, April 22, 2019 after Bank of America, NA recorded its deed of trust.

46.    That the Defendants breached the standard of care when they failed to present a quitclaim deed to Sassan contemporaneously with the Formal Agreement. Had they done so, Sassan would have executed same.

47.    That, as a direct and proximate result of the Defendants' breach, the Plaintiff is not able to sell the Marital Home, sever the condo into two separate units, or refinance the prime mortgage without satisfying Sassan's $192,082.00 Bank of America, NA loan.

48.    That the Defendants further breached the standard of care by including a provision in the Formal Agreement that gives Sassan the ability to prevent the Plaintiff from selling the Marital Home without his consent to a sale price or without his consent to a choice of broker.

49.    That, in order to escape the financial burden created by Sassan's cessation of monthly shopping center payments, Plaintiff sought to sell the Marital Home. However, Sassan refused to provide consent to the selection of a broker and refused to consent to any sale price proposed by the Plaintiff and Plaintiff could not sell the property. In fact, on one instance Plaintiff had obtained the Quitclaim Deed from Sassan and his consent to a broker and price then listed the property, thereafter Sassan revoked his consent to the broker for no reason.

50.    That, in the Handwritten Agreement, Sassan agreed to transfer the Marital Home to the Plaintiff. Had such a term been contained in the Formal Agreement and Sassan been required to sign a quitclaim deed as a part of the marital settlement agreement, Sassan would have consented to such in April 2016.

51.    That, as a result of the Defendants' breaches of the standard of care, Plaintiff was unable to sell the Marital Home, unable to refinance the mortgage on the Marital Home, and was unable to sever the condo into its constituent units and sell one of the units. Plaintiff, therefore, has become subject to foreclosure proceedings and needed to take measures to stave off the same.

52.    That Defendants knew or should have known that there was no second mortgage on the Marital Home, that the debt was unsecured and not in the Plaintiff's name, and knew or should have known that without any mechanism to force Sassan to transfer his interest the Plaintiff

10

promptly upon the divorce, that Marital Home would revert to tenancy in common, where it would
be vulnerable to Sassan's unsecured creditors.

### School Tuition/Child Support

53.     That the Plaintiff and Sassan agreed in both of the aforementioned agreements that
the Plaintiff would have physical custody of the children, but that both Parties would be financially
responsible for the children and that Sassan would be responsible for paying for the children's
private school tuition.

54.     That in lieu of monthly support payments, the Formal Agreement provided that
Sassan would be responsible for paying all of the children's private school tuition upon "adequate
notice of all expenses for which [Sassan] would be liable..."

55.     That Sassan did not pay for the children's' private school tuition, and on March 29,
2018, Defendants, initiated a contempt proceeding in the underlying divorce case against Sassan
for his failure to pay tuition.

56.     That, at the Contempt hearing, Sassan argued that he was not obligated to forward
the Plaintiff the distributions that he received from 9191 LLC (the agreement only applied to the
non-existent Azar, BK, Inc.). Thus, he argued that the monthly payments he made to Plaintiff
were intended to cover the costs of private school tuition.

57.     That on or about August 2, 2018, after two days of hearings, the Honorable Kendra
Y. Ausby entered an order denying contempt as to the tuition payment issue. Specifically, Judge
Ausby held that she could not conclude that Sassan willfully or intentionally failed to comply with
the Formal Agreement by failing to pay the costs of tuition, in part, because Plaintiff could not
prove that Sassan had an independent obligation to forward his monthly distributions from 9191

11

LLC to the Plaintiff. Thus, Plaintiff could not prove that the monthly payments should not be credited against Sassan's obligation to pay the children's private school tuition.

58.    That Plaintiff unsuccessfully appealed the Court's refusal to hold Sassan in contempt.

59.    That, as a result of the Defendants' negligence in the drafting of the Formal Agreement, Plaintiff has forever lost her right to the monthly distributions from 9191 LLC, and to any proceeds from the sale of Sassan's interest in 9191 LLC. Following the loss of the monthly shopping center distributions, the Plaintiff became financially insolvent. Plaintiff attempted to sell the Marital Home, but Sassan generally would not agree, and Plaintiff had no means to pay the mortgage associated with the Marital Home nor escape the burden thereof by selling the home. After the grant of absolute divorce, Plaintiff attempted to have Sassan execute a quitclaim deed. Sassan refused to sign a quitclaim deed until the Plaintiff sued him in a separate action, and he ultimately acquiesced on April 22, 2019. *See Shiva Louie v. A.S. Sharifi*, Case No.: 24C19000082, in the Circuit Court for Baltimore City, Maryland. The Quitclaim Deed was recorded on May 28, 2019. Unfortunately, on February 11, 2019, Bank of America, NA, recorded a Deed of Trust for Sassan's $192,082.00 line of credit. Plaintiff was eventually able to obtain a contract for the sale of the Marital Home after she obtained the Quitclaim Deed, only to learn of Bank of America's lien, and the sale could not proceed.

60.    That as a result of the Defendants' negligence as set forth herein, the Marital Home went into foreclosure because the Plaintiff was unable to pay the mortgage thereon, support herself and her children, was unable to refinance, and was unable to sell or partition the Marital Home, such that Plaintiff was forced to file for Chapter 13 Bankruptcy on August 13, 2019.

61.    That, but for the Defendants' negligence, 9191 LLC would have been identified correctly in the Formal Agreement and the Plaintiff would have been able to enforce her right to the monthly distributions therefrom and once Sassan sold his interest therein, she would have been entitled to apply the proceeds of the sale to the $400,000 mortgage on the Marital Home, and then received half of the remaining proceeds.

62.    That, but for the Defendants' negligence, Sassan would have executed a quitclaim deed, and the Plaintiff would have recorded said quitclaim deed before Bank of America, NA seized Sassan's interest in the Marital Home. Further, the Plaintiff would not have been forced to incur yet more legal fees to force Sassan to execute a quitclaim deed.

63.    That, but for the Defendants' negligence, a reasonable judge would have held Sassan in contempt for his failure to pay the children's tuition because he could not have argued that the monthly payments, he forwarded from 9191 LLC were for his children's tuition.

## COUNT I - LEGAL MALPRACTICE

64.    That Plaintiff adopts and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

65.    That, at all times relevant hereto, Defendants held themselves out to the public generally and to Plaintiff, specifically, as attorneys knowledgeable in handling divorce actions, including, but not limited to, divorce actions involving the drafting of marital settlement agreements.

66.    That Plaintiff entered into a retainer agreement with the Defendants outlining the payment for the services provided by Defendant Sally B. Gold, Carrie L. Polley, and the Law Offices of Sally B. Gold. Moreover, the Defendants Carrie L. Polley and Law Office of Sally B.

13

Gold, LLC, entered their appearances as counsel of record for Plaintiff in the underlying matter. Thus, Defendants were in an attorney-client relationship with Plaintiff.

67.    That Defendants owed Plaintiff a duty to exercise that degree of care and skill which a reasonably competent attorney, engaged in a similar practice and acting in similar circumstances, would exercise. This reasonable duty included, but was not limited to, (1) conducting basic research into the identity of the entity which owned the Ellicott City shopping center and its address, or at a minimum, reading client communications identifying the correct name of the entity; (2) providing a mechanism in the marital settlement agreement to allow the Plaintiff to force the sale of the Marital Home; (3) obtaining an executed quitclaim deed to the Marital Home when Amir Sassan Sharifi had disclosed a $192,082.00 unsecured loan; (4) providing a deadline by which Amir Sassan Sharifi would sell his interest in 9191 LLC; (5) explaining the legal import of the Formal Agreement to the Plaintiff, as well as the pros and cons of entering into same; and (6) otherwise acting in a competent fashion and in accordance with the applicable standard of care.

68.    That Defendants breached the standard of care owed to Plaintiff by failing to act in accordance with their duties set forth in the preceding paragraphs and by otherwise failing to act in a competent fashion and in accordance with the applicable standard of care.

69.    That Defendants' breach of the standard of care was the direct and proximate cause of Plaintiff's injuries and damages. But for Defendants' breach of the standard of care by failing to competently draft the Marital Settlement Agreement, failing to competently research and identify 9191 LLC and the location of the Ellicott City shopping center, failing to read the Plaintiff's communications, failing to ensure that Sassan executed a quitclaim deed, failing to provide a mechanism in the Formal Agreement for the Plaintiff to force the sale of the Marital

Home, Plaintiff would have, to a reasonable degree of probability, collected and enjoyed the proceeds (whether in the form of monthly distributions or the proceeds of sale) of Sassan's interest in 9191 LLC, as well as would have been able to partition, refinance, or sell the Marital Home and avoided any obligation to pay Sassan's $192,082.00 Bank of America, NA loan, would have successfully forced Sassan to pay the children's private school tuition, Plaintiff would have avoided bankruptcy, and would have avoided subsequent counsel's legal fees.

70.    That, as a direct and proximate result of Defendants' negligence, as aforesaid, Plaintiff has suffered economic losses as set forth hereinabove.

71.    That, as a direct and proximate result of Defendants' negligence, as aforesaid, Plaintiff has suffered severe emotional distress due to her fear that she will be forced out of her home.

72.    That, at all times relevant hereto, Defendant Carrie L. Polley was acting as the agent or employee of Defendant Sally B. Gold, t/a Law Offices of Sally B. Gold, and/or Law Offices of Sally B. Gold, LLC and in furtherance of her/its business interests.  Defendant Law Offices of Sally B. Gold, LLC, was created in July 2017 and is the successor-in-interest to Sally B. Gold t/a Law Offices of Sally B. Gold.

73.    That Defendants billed and received payment for their negligently performed services, such that the Plaintiff is entitled to repayment of all fees paid to the Defendants.

74.    That Plaintiff did not cause or contribute to the injuries complained of herein.

75.    That Plaintiff has taken reasonable measures to mitigate her damages and, as a result, has incurred legal fees related thereto.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages in an amount that exceeds $75,000.00 (*see* Md. Rule 2-305(b)), pre and

15

post-judgment interest and costs. Plaintiff further prays that this Honorable Court grant such other and further relief as the nature of her cause may require.

Dated: April 2, 2020                    Respectfully submitted:

                                        HENDERSON LAW, LLC

                                        Wes P. Henderson
                                        Patrick D. Gardiner
                                        2127 Espey Court, Suite 204
                                        Crofton, Maryland 21114
                                        (T) 410.721.1979
                                        (F) 410.721.2258
                                        wph@hendersonlawllc.com
                                        patrick@hendersonlawllc.com

                                        Attorneys for Plaintiff


### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable by jury in this matter.

                                        Patrick D. Gardiner


16

IN THE CIRCUIT COURT FOR Baltimore City

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

**THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING**

FORM FILED BY: ☒PLAINTIFF  ☐DEFENDANT    CASE NUMBER _____

CASE NAME: Shiva Louie vs. Law Offices of Sally B. Gold, LLC, et al.

PARTY'S NAME: Shiva Louie    PHONE:

PARTY'S ADDRESS: 10 East Lee Street, #2002, Baltimore MD 21202

PARTY'S E-MAIL:

If represented by an attorney:

PARTY'S ATTORNEY'S NAME: Wes P. Henderson    PHONE: 410-721-1979

PARTY'S ATTORNEY'S ADDRESS: 2127 Espey Court, Suite 204, Crofton, Maryland 21114

PARTY'S ATTORNEY'S E-MAIL: wph@hendersonlawllc.com

JURY DEMAND? ☐Yes ☒No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known:

ANTICIPATED LENGTH OF TRIAL?: _____ hours  >5 days

### PLEADING TYPE

New Case: ☒Original  ☐Administrative Appeal  ☐Appeal
Existing Case: ☐Post-Judgment  ☐Amendment
*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (Check one box.)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint - DOB of Youngest Pit:
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☒ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Workers' Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. - Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)    Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☒ Damages-Compensatory
- ☐ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☒ Findings of Fact
- ☐ Foreclosure
- ☐ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory
- ☐ Judgment-Default

- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated Liability above,* mark one of the following. This information is *not* an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☒ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☒ Over $100,000

☐ Medical Bills $_____    ☐ Wage Loss $_____    ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | | | |
|---|---|---|---|---|---|
| A. Mediation | ☒ Yes | ☐ No | C. Settlement Conference | ☒ Yes | ☐ No |
| B. Arbitration | ☐ Yes | ☒ No | D. Neutral Evaluation | ☒ Yes | ☐ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, check here and attach form CC-DC-041

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, check here and attach form CC-DC-049

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.         (Case will be tracked accordingly)*

- ☐ 1/2 day of trial or less
- ☐ 1 day of trial time
- ☐ 2 days of trial time
- ☐ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

- ☐ Expedited- Trial within 7 months of Defendant's response
- ☐ Standard - Trial within 18 months of Defendant's response

## EMERGENCY RELIEF REQUESTED

CC-DCM-002 (Rev. 04/2017)                Page 2 of 3

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE
## MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ Expedited - Trial within 7 months of      ☐ Standard - Trial within 18 months of
      Defendant's response                               Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____ |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

4/2/2020
Date

2127 Espey Court, Suite 204
Address

Crofton          MD     21114
City         State     Zip Code

Signature of Counsel / Party

Patrick D. Gardiner
Printed Name

CC-DCM-002 (Rev. 04/2017)            Page 3 of 3

CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   (P r i v a t e   P r o c e s s)
Case Number: 24-C-20-001841 OT
C I V I L
Shiva Louie vs Law Offices Of Sally B. Gold, LLC, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: SALLY B GOLD, Individually
            (TRA) Law Offices Of Sally B. Gold
            201 North Charles Street
            Suite 1630
            Baltimore, MD 21201


     You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:  Shiva Louie
                                  10 East Lee Street
                                  #2002
                                  Baltimore, MD 21202


WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland


Date Issued:  04/08/20

                    Marilyn Bentley
                    Clerk of the Circuit Court per


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )
Case Number: 24-C-20-001841 OT
C I V I L
Shiva Louie vs Law Offices Of Sally B. Gold, LLC, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

      To: LAW OFFICES OF SALLY B. GOLD, LLC
Serve On: Sally B. Gold
          157 West Lanvale Street
          Baltimore, MD 21201


      You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:   Shiva Louie
                                   10 East Lee Street
                                   #2002
                                   Baltimore, MD 21202


WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland

Date Issued:  04/08/20        *Marilyn Bentley*
                              Marilyn Bentley
                              Clerk of the Circuit Court  per   _____


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

CIRCUIT COURT FOR BALTIMORE CITY
Marilyn Bentley
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722; TTY for Deaf: (410)-333-4389


W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )

Case Number: 24-C-20-001841 OT
C I V I L

Shiva Louie vs Law Offices Of Sally B. Gold, LLC, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: CARRIE L POLLEY
            201 North Charles Street
            Suite 1630
            Baltimore, MD 21201


        You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:   Shiva Louie
                                   10 East Lee Street
                                   #2002
                                   Baltimore, MD 21202

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland

Date Issued:   04/08/20          _Marilyn Bentley_
                                 Marilyn Bentley
                                 Clerk of the Circuit Court   Per   _LT_


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| SHIVA LOUIE | * |
| | * |
| **Plaintiff** | * |
| | * |
| **v.** | *   Case No.: 24-C-20-001841 OT |
| | * |
| LAW OFFICES OF SALLY B. GOLD | * |
| LLC, ET AL. | * |
| | * |
| **Defendants** | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS

**TO:**      Law Offices of Sally B. Gold, LLC, Sally B. Gold, and Carrie L. Polley, Defendants (To be Answered Separately)

**FROM:**   Shiva Louie, Plaintiff

Plaintiff, Shiva Louie, by and through her undersigned counsel, propounds these Interrogatories, to which the Defendants shall respond fully, in writing under oath, within 30 days or within the time otherwise required by court order or by the Maryland Rules, in accordance with the Instructions and Definitions set forth hereinafter.

### INSTRUCTIONS

Pursuant to Rule 2-421, you are required to answer the following interrogatories within 30 days or within the time otherwise required by court order or by the Maryland Rules.

(a) In accordance with Rule 2-421(b), your response shall set forth the interrogatory, and shall set forth the answer to the interrogatory "separately and fully in writing under oath" or "shall state fully the grounds for refusal to answer any interrogatory." The response shall be signed by you. (Standard Instruction (a).)

(b) Also in accordance with Rule 2-421(b), your answers "shall include all information available" to you "directly or through agents, representatives, or attorneys." (Standard Instruction (b).)

(c) Pursuant to Rule 2-401(e)), these interrogatories are continuing. If you obtain further material information before trial you are required to supplement your answers promptly. (Standard Instruction (c).)

(d) If pursuant to Rule 2-421(c), you elect to specify and produce business records of yours in answer to any interrogatory, your specification shall be in sufficient detail to enable the interrogating party to locate and identify the records from which the answers may be ascertained. (Standard Instruction (d).)

(e) If you perceive any ambiguities in a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering. (Standard Instruction (e).)

## DEFINITIONS

In these interrogatories, the following definitions apply:

(a) "Document" includes electronically stored information and any writing, drawing, graph, chart, photograph, sound recording, image or other data or data compilation stored in any medium from which information can be obtained, translated if necessary, through detection devices into reasonably usable form. (Standard General Definition (a).)

(b) "Identify", "identity", or "identification": (1) when used in reference to a natural person, means that person's full name, last-known address, home and business telephone numbers, and present occupation or business affiliation; (2) when used in reference to a person other than a natural person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last-known address, telephone number, and principal place of business, (3) when used in reference to any person after the person has been properly identified previously means the person's name, and (4) when used in reference to a document, requires you to state the date, the author (or, if different, the signer or signers), the addressee, the identity of the present custodian of the document, and the type of document (e.g., letter, memorandum, telegram, or chart, etc.) or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the interrogatory. (Standard General Definition (b).)

(c) "Person" includes an individual, general or limited partnership, joint-stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited-liability partnership, limited-liability company, the State, an agency or political subdivision of the State, a court, and any other government entity. (Standard General Definition (c).)

(d) "Complaint" means the initial complaint filed in the Plaintiff in the above captioned matter, and any amendments thereto.

(e) "Occurrence" means the events described in the Complaint and other pleadings.

(f) "You" and "your" include the person to whom these requests are addressed, and all of that person's agents, representatives and attorneys.

(g) "Marital Settlement Agreement" means the finalized typewritten document that the Plaintiff and Amir Sassan Sharifi entered into and which was incorporated but not merged into the divorce decree in *Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502, in the Circuit Court for Baltimore City. Depending on the context, "Marital Settlement Agreement" may include any drafts of the aforementioned document, but it shall not include the handwritten document created by Plaintiff and Mr. Sharifi.

(h) The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine, or neuter form shall include each of the other genders.

## INTERROGATORIES

**Interrogatory No.: 1:**    Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person. (Standard General Interrogatory No. 1.)

**Interrogatory No.: 2:**    Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and, with respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial, summarize the qualifications of the expert, state the terms of the expert's compensation, and attach to your answers any available list of publications

written by the expert and any written report made by the expert concerning the expert's findings and opinions. (Standard General Interrogatory No. 2.)

**Interrogatory No.: 3:**       If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them. (Standard General Interrogatory No. 3.)

**Interrogatory No.: 4:**       If any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action. (Standard General Interrogatory No. 5.)

**Interrogatory No.: 5:**       Were you retained by Plaintiff to render legal services in connection with the Plaintiff's divorce proceeding with Amir Sassan Sharifi? If your answer is in the affirmative, specifically describe the nature and extent of the legal services that you agreed to provide Plaintiff and the dates on which you agreed to provide said services.

**Interrogatory No.: 6:**       Identify every lawsuit ever filed against you, including counterclaims asserted against you, alleging any cause of action for professional malpractice.

**Interrogatory No.: 7:**       Identify any document pertaining to Plaintiff's retention of your services, including but not limited to, any retainer agreement.

**Interrogatory No.: 8:**        If you contend that Law Offices of Sally B. Gold, LLC is not the successor in interest to Sally B. Gold t/a Law Offices of Sally B. Gold, set forth all facts and identify all documents supporting your contention.

**Interrogatory No.: 9:**        Describe the nature and duration of the professional or business relationship between you and any other Defendant.

**Interrogatory No.: 10:**        If any documents relevant to any aspect of or issues in this lawsuit have been lost, misplaced, or destroyed, please identify fully each said document and describe how it was lost, misplaced, or destroyed.

**Interrogatory No.: 11:**        If you contend that any person who is not a party to this action caused or contributed to the plaintiff's alleged injuries and damages, identify each such person, state how you contend each such person caused or contributed to the alleged injuries, and state all facts upon which you based your contention.

**Interrogatory No.: 12:**        Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

**Interrogatory No.: 13:**        If you contend that the entity identified as 9191 LLC in the Complaint (or any amendment thereto) was misidentified in the Marital Settlement Agreement, then please set forth all facts that that support your contention.

**Interrogatory No.: 14:**        Explain why 9191 LLC is not correctly identified in the Marital Settlement Agreement.

**Interrogatory No.: 15:**      Do you dispute the Plaintiff's contention that you were responsible for ensuring the Marital Settlement Agreement correctly identified the entities in which Mr. Sharifi held an interest? If your answer is in the affirmative, please state the basis for your contention.

**Interrogatory No.: 16:**      If you contend that the Plaintiff has failed to mitigate her damages, please identify all facts, proof, or evidence on which you base this contention.

**Interrogatory No.: 17:**      If you contend that Plaintiff failed to follow your advice in connection with Plaintiff's legal matter, identify: (a) the nature and substance of the advice Plaintiff failed to follow; (b) the manner in which you communicated the advice to Plaintiff; and (c) the manner in which Plaintiff's failure to follow the advice affected your handling of Plaintiff's case.

**Interrogatory No.: 18:**      Identify any and all efforts that you or anyone at your direction undertook to review the Marital Settlement Agreement and ensure that the information therein, including but not limited to the addresses and identifications of corporate entities, was accurate before its execution.

**Interrogatory No.: 19:**      Identify all efforts made to obtain to discovery from Amir Sassan Sharifi or any other individual or entity related to Plaintiff's divorce case.

**Interrogatory No.: 20:**      Do you dispute any of the factual allegations in the Plaintiff's complaint? If so explain.

**Interrogatory No.: 21:**      If you contend that the misidentification of 9191 LLC in the Marital Settlement Agreement has not precluded the Plaintiff from receiving the monthly

payments said entity makes to Amir Sassan Sharifi for the rest of Mr. Sharifi's life, please set forth all facts that support your contention.

**Interrogatory No.: 22:**     Identify your legal basis, factual basis, and all supporting documents related to your recommendation that Plaintiff execute the Marital Settlement Agreement dated April 8, 2016 in as *Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, case number 24-D-15-002502.

**Interrogatory No.: 23:**     Identify the person or persons answering these Interrogatories or who contributed information used in answering these Interrogatories. If more than one person provided the answers or information, please identify the specific Interrogatories answered by each person.

**Interrogatory No.: 24:**     Describe any limitation that you placed upon the legal services rendered to Plaintiff and identify the documents through which you identified said limitation to the Plaintiff.

**Interrogatory No.: 25:**     Identify, in conformity with the instructions above, each communication between you and Plaintiff, that referred or related to the matter that you were handling on Plaintiff's behalf, identify all documents that refer or relate to said communications, and identify all persons (other than yourself and Plaintiff) who have personal knowledge of said communications.

**Interrogatory No.: 26:**     If you contend that Plaintiff and/or any of her representatives have made any admission against interest, state the substance of the admission, identify the

communication concerning the admission, identify all documents that refer or relate to the admission, and identify all persons who have personal knowledge of the admission.

Respectfully submitted:

Wes P. Henderson
Patrick D. Gardiner
HENDERSON LAW, LLC
2127 Espey Ct, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
Patrick@hendersonlawllc.com

Attorneys for Plaintiff

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| SHIVA LOUIE | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Case No.: 24-C-001841 OT |
| | * | |
| LAW OFFICES OF SALLY B. GOLD | * | |
| LLC, ET AL. | * | |
| | * | |
| **Defendants** | * | |
| | * | |

*********************************************************************

### PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS OF FACTS AND GENUINENESS OF DOCUMENTS TO DEFENDANTS

**TO:**    Law Offices of Sally B. Gold, LLC, Sally B. Gold, individually and t/a Law Offices of Sally B. Gold, and Carrie L. Polley, Defendants (To be Answered Separately)

**FROM:**    Shiva Louie, Plaintiff

Plaintiff, Shiva Louie, by and through her undersigned counsel and pursuant to Maryland Rule 2-424, requests that Defendants make the following admissions within 30 days of service of these requests or within the time otherwise required by court order or the Maryland Rules. If objection is made, please state the reason for the objection.

**Request No.: 1.**    Admit that the Defendants were properly served with the summons and complaint in the above captioned case.

**Request No.: 2.**    Admit that the Defendants have no basis to assert as a defense or affirmative defense the lack of subject matter jurisdiction or the lack of personal jurisdiction.

**Request No.: 3.**    Admit that the Defendants have no evidence to support the affirmative defense that the Plaintiff assumed the risk of her injuries.

**Request No.: 4.**    Admit that the Defendants have no evidence to support the affirmative defense that the Plaintiff was contributorily negligent, or that she failed to mitigate her damages.

**Request No.: 5.**    Admit that the Defendants have no evidence to support the affirmative defense that the Plaintiff's case is barred by the Statute of Limitations.

**Request No.: 6.**    Admit that Plaintiff retained Defendant Carrie L. Polley to represent her with respect to her limited divorce case with Amir Sassan Sharifi, styled as *Amir Sassan Sharifi*

*(erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502.

**Request No.: 7.**     Admit that Plaintiff retained Defendant Sally B. Gold to represent her with respect to her limited divorce case with Amir Sassan Sharifi, styled as *Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502.

**Request No.: 8.**     Admit that Plaintiff retained Defendant Sally B. Gold t/a Law Offices of Sally B. Gold to represent her with respect to her limited divorce case with Amir Sassan Sharifi, styled as *Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502.

**Request No.: 9.**     Admit that Plaintiff retained Defendant Law Offices of Sally B. Gold, LLC to represent her with respect to her limited divorce case with Amir Sassan Sharifi, styled as *Amir Sassan Sharifi (erroneously noted as Sharif) v. Shiva Louie Sharifi (erroneously noted as Shiva Lovie Sharif)*, Case No. 24-D-15-002502.

**Request No.: 10.**     Admit that Carrie L. Polley agreed to draft a formal marital settlement agreement on behalf of Plaintiff.

**Request No.: 11.**     Admit that Sally B. Gold agreed to draft a formal marital settlement agreement on behalf of Plaintiff.

**Request No.: 12.**     Admit that Sally B. Gold t/a Law Offices of Sally B. Gold agreed to draft a formal marital settlement agreement on behalf of Plaintiff.

**Request No.: 13.**     Admit that Law Offices of Sally B. Gold, LLC agreed to draft a formal marital settlement agreement on behalf of Plaintiff.

**Request No.: 14.**     Admit that Exhibit A is a genuine and authentic copy of an email sent from Plaintiff to Carrie L. Polley on March 11, 2016.

**Request No.: 15.**     Admit that Exhibit A contained the following attachments: (1) a Handwritten Agreement; (2) Plaintiff's marriage certificate; and (3) a Microsoft Word version of the Handwritten Agreement with comments and notes correcting the names of various entities and the addresses of various pieces of real property which were misidentified in the Handwritten Agreement.

**Request No.: 16.**     Admit that Shiva Louie advised you that Amir Sassan Sharifi held an ownership interest in 9191 LLC.

**Request No.: 17.**     Admit that Shiva Louie advised you that 9191 LLC owns a retail shopping center located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043.

**Request No.: 18.**     Admit that the Microsoft Word document attached to Exhibit A identifies the property located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043.

**Request No.: 19.**      Admit that the Marital Settlement Agreement drafted by Carrie L. Polley identified the property located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043 as having the following street address: 9195 Baltimore National Pike.

**Request No.: 20.**      Admit that the Marital Settlement Agreement drafted by Carrie L. Polley identified the owner of the real property located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043 as Azar, BK, Inc.

**Request No.: 21.**      Admit that the owner of the property located at 9191 Baltimore National Pike, Ellicott City, Maryland 21043 at the time of the execution of the Marital Settlement Agreement was 9191 LLC.

**Request No.: 22.**      Admit that the Marital Settlement Agreement drafted by Carrie L. Polley did not provide a timeline for Mr. Sharifi to sell his interest in 9191 LLC.

**Request No.: 23.**      Admit that Defendant Carrie L. Polley continued to represent the Plaintiff with respect to the enforcement of the Marital Settlement Agreement without entering into a new retainer agreement.

**Request No.: 24.**      Admit that Defendant Sally B. Gold continued to represent the Plaintiff with respect to the enforcement of the Marital Settlement Agreement without entering into a new retainer agreement.

**Request No.: 25.**      Admit that Defendant Sally B. Gold t/a Law Offices of Sally B. Gold continued to represent the Plaintiff with respect to the enforcement of the Marital Settlement Agreement without entering into a new retainer agreement.

**Request No.: 26.**      Admit that Defendant Law Offices of Sally B. Gold, LLC continued to represent the Plaintiff with respect to the enforcement of the Marital Settlement Agreement without entering into a new retainer agreement.

**Request No.: 27.**      Admit that Defendants filed a Petition to Enforce Marital Settlement Agreement and/or Petition for Contempt on behalf of Plaintiff on or about March 29, 2018.

**Request No.: 28.**      Admit that Plaintiff is unable to recover any of the value of Amir Sassan Sharifi's interest in 9191 LLC from Amir Sassan Sharifi because the entity's address was incorrectly identified on the Marital Settlement Agreement drafted by Carrie L. Polley.

**Request No.: 29.**      Admit that Plaintiff is unable to recover any of the value of Amir Sassan Sharifi's interest in 9191 LLC from Amir Sassan Sharifi because the entity was incorrectly identified on the Marital Settlement Agreement drafted by Carrie L. Polley.

**Request No.: 30.**      Admit that Plaintiff is unable to recover any of the value of Amir Sassan Sharifi's interest in 9191 LLC, from Amir Sassan Sharifi because the Marital Settlement Agreement drafted by Carrie L. Polley does not provide any timeline or mechanism to force Mr. Sharifi to sell his interest in 9191 LLC.

**Request No.: 31.**     Admit that Plaintiff is unable to recover any of the value of the monthly payments Amir Sassan Sharifi receives from 9191 LLC from because the entity's address was incorrectly identified on the Marital Settlement Agreement drafted by Carrie L. Polley.

**Request No.: 32.**     Admit that Plaintiff is unable to recover any of the value the monthly payments Amir Sassan Sharifi receives from 9191 LLC because the entity was incorrectly identified on the Marital Settlement Agreement drafted by Carrie L. Polley.

**Request No.: 33.**     Admit that Amir Sassan Sharifi ceased forwarding his monthly disbursements from 9191 LLC to Shiva Louie when he discovered that the entity was not correctly identified in the Marital Settlement Agreement.

**Request No.: 34.**     Admit that prior to finalizing the Marital Settlement Agreement, the Defendants did not inspect the real property records to determine whether there was a second mortgage on the real property located at 10 East Lee Street, # 2002, Baltimore, Maryland 21202.

Respectfully submitted:

Wes P. Henderson
Patrick D. Gardiner
HENDERSON LAW, LLC
2127 Espey Ct, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
Patrick@hendersonlawllc.com

Attorneys for Plaintiff

**Patrick Gardiner**

| | |
|---|---|
| **From:** | Shiva Louie <shiva.louie@gmail.com> |
| **Sent:** | Thursday, June 6, 2019 10:07 PM |
| **To:** | Louie Shiva |
| **Subject:** | Fwd: Shiva Louie |
| **Attachments:** | Shiva Louie__Divorce_Agreement.docx; Shiva Louie_Agreement_P1.JPG; Shiva Louie_Agreement_P2.JPG; Shiva Louie_Agreement_P3.JPG; Shiva Louie_Agreement_P4.JPG; Shiva Louie_Marriage Certificate.JPG; Shiva Louie_Marriage Registration.JPG |

---------- Forwarded message ---------
From: **Shiva Louie** <shiva.louie@gmail.com>
Date: Fri, Mar 11, 2016 at 9:32 AM
Subject: Shiva Louie
To: <carrie@sallybgoldlaw.com>

Carrie,

Thank you for the chat today - I greatly appreciate it...

Attached please find the 4 pages of the handwritten agreement between my husband & I; the attached word document is the typed version of the agreement, I have added notes, addresses, $ amounts, etc... that seemed to be important to share.

Additionally please find a scan of our marriage registration & marriage certificate from 1993 - in case you need it. I will bring all other docs with me.

I look forward to meeting you on Monday @ 10.

Thanks again, Shiva
443.567.9832



1

I Amir Sassan Sharifi agree that as part of our (Shiva Louie-Sharifi & myself) divorce agreement – agree to the following:

- Our share in the 9191 Baltimore National Pike – (AZAR) will going forward belong to Shiva Louie-Sharifi (repayment of her inheritance) – with the understanding that the share in this location will be sold to the majority share-holder within 2 months of this agreement. Upon that time the funds will be spent on:
  o Paying off the home / our home mortgage
  o Paying off the 2nd loan
  o Paying off all credit card payments / outstanding balance
  o The home will be made to Shiva's name
  o The kids 2015/2016 tuition will be paid off
  o The leftover funds will be split 50/50 between myself and Shiva
- Light Street and Fayette street will be split 50/50 once sold – when not sold during these period the income will be split 50/50
- The children's tuition for high school (Ariane N Sharifi & Omeed J Sharifi) will be the responsibility of Sassan Sharifi
- Health care for the kids will be Shiva's responsibility
- Shiva will not carry Sassan's health insurance
- The family home will be made to Shiva's name once paid off
- Household belongings will belong to Shiva
- Sassan will keep the M class car & Shiva will keep her car
- All the kid's daily transportation will be Sassan's responsibility
- Shiva will have the kids 100% of the time / when Shiva is traveling Sassan will oversee their wellbeing & be responsible for them
- Child support will be the tuition for high school – as situations arise Sassan will assist
- Ifs Sassan makes over $80k per year he will pay Shiva alimony 50% of the total amount above & over $80k
- If the shoe in Uzbekistan deals have income – Sassan's share in hos partnership income from this deal will be split 50/50 with Shiva
- Any deals with SafeNet will also be: Sassan's share will be split 50/50 with Shiva
- Any clothing with Uzbekistan deal will also be split 50/50 with Shiva from Sassan's income

---

**Comments (margin annotations):**

- **Commented [LS1]:** - Should be changed to me
- **Formatted:** Line spacing: 1.5 lines
- **Commented [LS2]:** - Our share = 20% share in 9191 LLC
- **Commented [LS3]:** - Shopping center located at: 9191 Baltimore National Pike, Ellicott City MD
- **Commented [LS4]:** - Majority shareholder = Mr Ahmad Kabiryousefi
- **Commented [LS5]:** - Family home located at 10 East Lee St, Suite 2002 & 2003, Baltimore, MD, 21202
- **Commented [LS6]:** - $400k
- **Commented [LS7]:** - $200k
- **Commented [LS8]:** - $20k
- **Commented [LS9]:** - School = Friends School of Baltimore / $50k yearly for both
- **Commented [LS10]:** - Located at 1418 Light street, Baltimore
  - 35% share
- **Commented [LS11]:** - Sold Feb 2016 / $52k was our share, Sassan gave the check to me to pay for school
  - 20% share
  - Located at 8-12 Fayette street, Baltimore
- **Commented [LS12]:** - In my name
- **Commented [LS13]:** - Already in my name

- I Sassan agree that no one will be in my children's life/in their company that Shiva has not
  approved of
- Shiva's life insurance will be made to Ariane & Omeed's name as beneficiary
- Sassan's life insurance for $500k will be made to Ariane & Omeed's name – the monthly
  payment will be split 50/50 between Sassan & Shiva
- Once the school/high school tuition is paid off the alimony payments will in the amount of 33%
  of income above $50k/annual income to be paid monthly.

Commented [LS14]: - Done

Commented [LS15]: - To be done

Commented [LS16]: - $500/month – I pay for it

Formatted: Normal, Indent: Left: 0.25", No bullets or numbering

I   Amir Sassan Sharifi agree that as part of our ( Shiva Louie-Sharifi & myself ) Divorce agreement - agree to the following :

- our share in the 9195 Baltimore National Pike - (Azar) - will going forward belong to Shiva Louie -Sharifi (repayment of her inheritance) - with the understanding that the share in this location will be sold to the majority share holder within 2 months of this agreement. upon that time the funds will be spent on:
  - Paying off the home / our home Mortgage
  - Paying off the 2nd loan
  - Paying off all credit card payments outstanding balance
  - the home will be made to Shiva's name
  - the kids 2015/16 tuition will be paid off
  - the left over funds will be split 50/50 between myself & Shiva

Page 1 /1

- Light St. & Fayett St will be split 50/50 once sold - when not sold during these period the income will be split 50/50

- the Children's tuition for high School (Ariae N Sharifi & Omeed J. Sharifi) will be the responsibility of Sassan Sharifi

- heath Care for the kids will be Shiva's responsibility

- Shiva will not Carry Sassan's heath insurance

- the family home will be made to Shiva's name once paid off

- household belonging will belong to Shiva

- Sassan will keep the MClus car & Shiva will keep her car

- All the kids daily transportation will be Sassan's responsibility

- Shiva will have the kids @ 100% of the time / when Shiva traveling Sassan will oversee their wellbeing & be responsible for them

Page 2/4

- Child support will be the tuition for high school - As situations arise Sassan will assist.

- If Sassan makes over $80K per year he will pay Shiva alimoney 50% of the total amount above & over $80K

- if the shoe in uzbakestan deal's name income - Sassan's share in his partnership income from this deal will be split 50/50 with Shiva Any deals with Safe Net will also be - Sassan's share will be split 50/50 with Shiva

- Any clothing with uzbakestan deal will also be split 50/50 with shiva from Sassan's income.

- I Sassan agree that noone will be in my children's life / in their company that Shiva has not approved of

- Shiva's life insurance will be made to Arne & Omeed's name as benifitiory

- Sassan's life insurance for $500K will be made to Ariaie & Omeed's name — the monthly payment will be split 50/50 between Sassan & Shiva

- Once the School / high school tuition is paid off the alimoney payments will be in the amount of 33% ~~above~~ ~~value~~ of income above $50K / annual income. to be paid monthly.

A-S. ~~[signature]~~
AMIN SASSAN SHARIFI

Emily Lauren Zankman
NOTARY PUBLIC
BALTIMORE CITY
MARYLAND
MY COMMISSION EXPIRES OCT 29, 2017

~~[signature]~~
SHIVA LOUIE-SHARIFI

Emily Lauren Zankman
NOTARY PUBLIC
BALTIMORE CITY
MARYLAND
MY COMMISSION EXPIRES OCT 29, 2017

SS   Shiva 240 35 8033
     Sassan 225 19 3083

page 4/4

# COMMONWEALTH OF VIRGINIA

## STATE DEPARTMENT OF HEALTH, RICHMOND

# CERTIFICATE OF MARRIAGE

I CERTIFY THAT I JOINED TOGETHER IN MARRIAGE:

_Amir Sassan Sharifi_ , HUSBAND,

AND _Shiva Louie_ , WIFE,

ON _October 8, 1993_ IN _Fairfax County_ , VIRGINIA,

BY AUTHORITY OF A LICENSE ISSUED BY THE CLERK OF THE CIRCUIT COURT OF

_Fairfax County_ , VIRGINIA, DATED _September 17, 1993_

GIVEN UNDER MY HAND ON _October 8, 1993_ .

_[signature]_
(Signature of Officiant)

_Chairman, Baha'i Spiritual Assembly_
_of Falls Church, Virginia_
(Title of Officiant)

TO BE DELIVERED BY THE CELEBRANT TO THE PERSONS MARRIED.

VS 39 3/90

# COMMONWEALTH OF VIRGINIA
## MARRIAGE REGISTER

BK0094    492    6380

COPY A
FOR CLERK OF COURT

CIRCUIT COURT FOR CITY OR COUNTY OF **Fairfax**

CLERK'S NUMBER: 6380    **06380**

ATTENTION OFFICIANT:
License must be returned within 5 days of ceremony to Fairfax County Circuit Court 4110 Chain Bridge Rd. Fairfax, VA 22030

Margin reserved for binding. Please use black ribbon in typewriter or black undulating ink. This is a permanent record.

| | | |
|---|---|---|
| 1. FULL NAME OF GROOM | (first) **AMIR** (middle) **SASSAN** | (last) **SHARIFI** |
| 2. AGE **40** Years | 3. DATE OF BIRTH (Month, Day, Year) **4-1-53** | 4. PLACE OF BIRTH (state or foreign country) **Iran** |
| 5. RACE **Caucasian** | 5. NUMBER OF THIS MARRIAGE (first, second, etc.) **Second** | 7. MARITAL STATUS (if previously married) WIDOWED ☐ DIVORCED ☒ |
| 6. EDUCATION (Specify only highest grade completed) Elementary or Secondary (0-12) **12** College (1-4 or 5+) **4** | 9a. USUAL RESIDENCE: STREET ADDRESS OR RT. NUMBER **218 N Charles St.** | |
| 9b. CITY OR TOWN OF RESIDENCE **Baltimore** | 9c. COUNTY (if independent city, leave blank) | 9d. STATE (OR FOREIGN COUNTRY) **Maryland** |
| 10. NAME OF FATHER **Reza Sharifi** | 11. FULL MAIDEN NAME OF MOTHER **Roshan Mohaserin** | |

| | | | |
|---|---|---|---|
| 12. PRESENT NAME OF BRIDE | (first) **SHIVA** (middle) **(NMN)** | (last) **LOUIE** | MAIDEN SURNAME (if different) |
| 13. AGE **30** Years | 14. DATE OF BIRTH (Month, Day, Year) **8-12-63** | 15. PLACE OF BIRTH (state or foreign country) **Iran** | |
| 16. RACE **Caucasian** | 17. NUMBER OF THIS MARRIAGE (first, second, etc.) **Second** | 18. MARITAL STATUS (if previously married) WIDOWED ☐ DIVORCED ☒ | |
| 19. EDUCATION (Specify only highest grade completed) Elementary or Secondary (0-12) **12** College (1-4 or 5+) **4** | 20a. USUAL RESIDENCE: STREET ADDRESS OR RT. NUMBER **1304 Stuart Rd** | | |
| 20b. CITY OR TOWN OF RESIDENCE **Herndon** | 20c. COUNTY (if independent city, leave blank) **Fairfax** | 20d. STATE (OR FOREIGN COUNTRY) **Virginia** | |
| 21. NAME OF FATHER **Ata Louie** | 22. FULL MAIDEN NAME OF MOTHER **T. Dadressan** | | |

## MARRIAGE LICENSE

23. TO ANY PERSON LICENSED TO PERFORM MARRIAGES
You are hereby authorized to join the above-named persons in marriage under procedures outlined in the statutes of the Commonwealth of Virginia.

Signature: _(signature)_    Clerk of Court or Deputy

Date Issued **9-17-93**
License Expires Sixty Days After Above Date

Date Received by Clerk of License from Officiant **OCT 14 1993**

## MARRIAGE CERTIFICATE

| | | |
|---|---|---|
| 24. DATE OF MARRIAGE (Month, Day, Year) **October 8, 1993** | 25. PLACE OF MARRIAGE (county or independent city) **Fairfax Co.** VIRGINIA | 26. TYPE OF CEREMONY CIVIL ☐ RELIGIOUS ☒ |

27. I CERTIFY THAT I JOINED THE ABOVE NAMED PERSONS IN MARRIAGE ON THE DATE AND AT THE PLACE SPECIFIED.

SIGNATURE OF OFFICIANT: _(signature)_

TITLE OF OFFICIANT **Chairman, Baha'i Spiritual Assembly of Falls Church, VA**

Authorized to perform marriages by the Circuit Court of **Arlington** (city or county), Virginia, in **1971** (year of authorization)

NAME OF OFFICIANT (type or print) **Frank N. Brady**

ADDRESS OF OFFICIANT **200 N. Spring St., Falls Church, VA** (street or route number) (city or town) (state)

TO OFFICIANT:
Complete and sign certificate on both copies.
Return both copies within five days to Clerk of Court issuing license.

Section 32.1-267, Code of Virginia

VS3-1/90

A COPY TESTE:
JOHN T. FREY, CLERK

BY: _(signature)_
Deputy Clerk
Date: _4-29-96_
Original retained in the office of the Clerk of the Circuit Court of Fairfax County, Virginia

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

SHIVA LOUIE                       *

        Plaintiff                *

v.                                *     Case No.: 24-C-20-001841 OT

LAW OFFICES OF SALLY B. GOLD   *
LLC, ET AL.                  *

        Defendants             *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS

        **TO:**        Law Offices of Sally B. Gold, LLC, Sally B. Gold, and Carrie L. Polley, Defendants (To be Answered Separately)

        **FROM:**      Shiva Louie, Plaintiff

        Plaintiff, Shiva Louie, by and through her undersigned counsel, serves the following Requests for Production of Documents on Defendants, to be answered within the time allowed by law. Documents responsive to the following requests shall be produced for inspection and copying within 30 days of service of these requests or within the time otherwise required by court order or the Maryland Rules, in accordance with the Instructions and Definitions set forth hereinafter.

## INSTRUCTIONS

        (a)       In accordance with Rule 2-422(c), your written response "shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is refused, in which event the reasons for refusal shall be stated. If the refusal relates to part of an item or category, the part shall be specified."

        (b)       In accordance with Rule 2-422(d), the documents shall be produced "as they are kept in the usual course of business", or you "shall organize and label them to correspond with the categories in the request."

        (c)       Pursuant to Rule 2-422(a), these requests encompass all items within your "possession, custody or control."

(d)     Pursuant to Rule 2-401(e), these requests are continuing. If you obtain any further material information before trial, you are required to supplement your answers promptly.

(e)     If you perceive any ambiguity in a request, instruction or definition, set forth the matter deemed ambiguous and the construction used in responding.

## DEFINITIONS

(a)     "Document" or "documents" includes without limitation any written, typed, printed, electronic, recorded, or graphic matter, however preserved, produced or reproduced, of any type or description, regardless of the origin or location, including without limitation any binder, cover note, certificate letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, inter-office and intra-office communications), questionnaire, bill, purchase order, shipping order, contract, memorandum of contract, agreement, assignment, license, certificate, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgement, computer or data processing card, computer or data processing disc, computer-generated matter, photograph, photographic negative, phonograph recording, transcript or log of any such recording, projection, videotape, film, microfiche, and all other data compilations from which information can be obtained or translated, reports and/or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy as a separate document.

(b)     "Person" includes an individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, an agency or political subdivision of the State, a court, and any other governmental entity.

(c)     "You," "your" and "yourself" refer to the party to whom the following requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including person or entities outside of the United States.

(d)     "Communication" shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications.

(e)    "Relating to" means consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection with the matter discussed.

(f)    "Any" shall also mean "all" and vice versa.

(g)    "And" shall mean "or" and "or" shall mean "and" as necessary to call for the broadest possible response.

(h)    "Occurrence," unless otherwise indicated, means the collision or other event complained of in the pleadings.

(i)    "Identify" means, when used in reference to:

A.    *document*, to state separately:
    (1) Its description (e.g. letter, report, memorandum, etc.);
    (2) Its date;
    (3) Its subject matter;
    (4) The identity of each author or signer; and
    (5) Its present location and the identity of its custodian.

B.    An *oral* statement, communication, conference or conversation, to state separately:
    (1) Its date and the place where it occurred;
    (2) Its substance;
    (3) The identity of each person participating in the communication or conversation; and
    (4) The identity of all notes, memoranda or other documents memorializing, referring to or relating to the subject matter of the statement.

C.    A *natural person or persons*, to state separately:
    (1) The full name of each such person;
    (2) His or her present, or last know business address and his or her present or last known residential address; and
    (3) The employer of the person at the time to which the answer is directed and the person's title or position at that time.

D.    An *organization or entity* other than a natural person (e.g., a company, corporation, firm, association, or partnership), to state separately:
    (1) The full name and type of organization or entity;
    (2) The date and state of organization or incorporation;
    (3) The address of each of its principal places of business; and

(4) The nature of the business conducted.

## REQUESTS

**Request No.: 1.**        The retainer agreement between the Defendant(s) and the Plaintiff.

**Request No.: 2.**        Any opening "client form" or "matter form" or "file jacket" that the Defendant created concerning his, her, and/or its representation of the Plaintiff.

**Request No.: 3.**        All timesheets, (handwritten and computer-generated), relating to the representation of the Plaintiff.

**Request No.: 4.**        All invoices the Defendant(s) prepared for services rendered to the Plaintiff.

**Request No.: 5.**        All documents concerning any payment the Plaintiff made to the Defendant(s).

**Request No.: 6.**        All documents concerning any communication between the Plaintiff and the Defendant(s).

**Request No.: 7.**        All documents concerning any communication between the Defendant(s) and any other person concerning the matter(s) set forth in the pleadings. This request specifically includes, but is not limited to, all non-privileged e-mail communications that the Defendant(s) may possess relating to the Plaintiff.

**Request No.: 8.**        All drafts and finalized forms of any pleadings, orders or other documents filed in the underlying matter(s) that Defendant(s) was/were retained to handle on behalf of Plaintiff.

**Request No.: 9.**    All diaries or other calendars that refer to the Plaintiff (allowing for redaction of other entries unrelated to the Plaintiff).

**Request No.: 10.**    All other non-privileged notes, memoranda, and correspondence concerning the Plaintiff, including, but not limited to, emails with the Plaintiff and/or adverse counsel in the underlying matter.

**Request No.: 11.**    All written policies or procedures the Defendant(s) had in place concerning the representation of clients during the time frame(s) that Defendant(s) represented Plaintiff.

**Request No.: 12.**    All documents that describe the background of the defendant attorney(s) and any qualifications or expertise of that attorney (or attorneys of the defendant who represented the plaintiff).

**Request No.: 13.**    Print-outs from all websites the Defendant(s) used to promote his/her/its practice during the time frame(s) that Defendant(s) represented the Plaintiff.

**Request No.: 14.**    All statements of any person who may have knowledge of any material facts concerning the Plaintiff's complaint and the Defendant's answer(s).

**Request No.: 15.**    All documents concerning any similar claim that has been made against the Defendant(s).

**Request No.: 16.**    All insurance policies under which a person carrying on an insurance business might be liable to satisfy all or part of a judgment that might be entered in this action or reimburse Defendant(s) for payments made to satisfy such a judgment.

**Request No.: 17.**    All written reports of each person whom you expect to call as an expert witness at trial.

**Request No.: 18.**    The most recent resume or *curriculum vitae* of each expert whom you expect to call as an expert witness at trial.

**Request No.: 19.**    All notes, diagrams, photographs or other documents prepared or reviewed in connection with their assignment in this case by each person whom you expect to call as an expert witness at trial.

**Request No.: 20.**    All drafts, working papers, or documents generated by each witness whom you intend to call as an expert at trial, in connection with the opinions and subjects on which the witness is expected to testify.

**Request No.: 21.**    Each publication or paper that was written or worked on by each witness whom you intend to call as an expert witness at trial, and which refers or relates to the opinions and subjects on which the witness is expected to testify.

**Request No.: 22.**    A complete copy of any file maintained by any expert that you intend to call as a witness at trial.

**Request No.: 23.**    A list of cases that any expert that you intend to call at trial has been involved in for the last five (5) years.

**Request No.: 24.**    Any documentation at all upon which you intend to base in whole, or in part, any defense to the allegations set forth in the Plaintiff's legal malpractice Complaint.

**Request No.: 25.**    All documents related to you or your firm's legal representation of the Plaintiff including, but not limited to, retainer agreements, employment contracts, file notes, correspondence, memoranda, pleadings, e-mails, etc.

**Request No.: 26.**    All documents, correspondence, or inter-office memoranda concerning the facts, matters, circumstances, or allegations of the underlying divorce action included in the legal malpractice Complaint in the instant action, as well as any amendments thereto.

**Request No.: 27.**    Each document evidencing any expenses you incurred on behalf of the Plaintiff.

**Request No.: 28.**    Each document reflecting any telephone conversations or telephone messages, notes, email, and all forms of informal communication, or notations made by, for or between you, your firm and the Plaintiff, or anyone else relative to you or your firm's legal representation of Plaintiff.

**Request No.: 29.**    Any document evidencing any communication with you and your firm or any other attorney regarding the allocation of responsibilities, fees, or breakdown of shared legal work and representation of Plaintiff.

**Request No.: 30.**    Any documents evidencing any communication with you and your firm or any other attorney, witness, or potential witness or other party relative to you or your firm's legal representation of the Plaintiff.

**Request No.: 31.**    All documents in support of any factual allegations and/or contentions contained in your Answers to the Plaintiff's Interrogatories.

**Request No.: 32.**     Please provide a copy of your complete physical file(s) regarding your representation of Plaintiff including the copy of any folder or redwell the file is contained in.

**Request No.: 33.**     Please provide a copy of your complete computer kept file(s) regarding your representation of Plaintiff including but not limited to case management software data or word processing data. If your office is a paperless office, please print out the hard copies of any documentation scanned in or stored electronically or digitally.

**Request No.: 34.**     Any and all documents you intend to introduce or rely upon at trial in this case not produced in response to the other requests.

**Request No.: 35.**     Please produce any and all backup and/or archived data which evidences, refers or relates to Plaintiff.

**Request No.: 36.**     Please produce any and all documentation of software and hardware modifications to the PC(s) used by you during the period of March 1, 2016 through present, including but not limited to modification dates, software/hardware titles and version numbers, names of persons performing modifications, location of any backup of the data on the computer performed prior to modification, and disposition of replaced software and hardware.

**Request No.: 37.**     Please produce any and all software installed or used on the PC(s) used by you during the period of March 1, 2016 through present. Include all titles and version numbers. Include authors and contact information for authors of custom or customized software. Include operating system(s) software.

**Request No.: 38.**     Please produce any and all voice messaging records including but not limited to caller message recordings, digital voice recordings, interactive voice response unit

(IVR/VRV) recordings, unified messaging files, and computer-based voice mail files to or from the Plaintiff and/or his representatives and the Defendants' and/or their representatives for the period of March 1, 2016 through present.

**Request No.: 39.**    Please produce all telephone use records including but not limited to logs of incoming and outgoing calls between you and the Plaintiff or her representatives, invoices, and contact management records, manually or automatically created or generated for the period from March 1, 2016 through present.

**Request No.: 40.**    Please produce any and all manual and automatic records of equipment use pertaining to the Plaintiff or her representatives, including but not limited to fax, access, audit, security, e-mail, printing, error and transmission records for the period of March 1, 2016 through present.

**Request No.: 41.**    Please produce all documents obtained in response to subpoena(s) issued in this matter.

**Request No.: 42.**    Please produce all versions or drafts of the typewritten Marital Settlement Agreement that the Defendants prepared for the Plaintiff.

Respectfully submitted:

Wes P. Henderson
Patrick D. Gardiner
HENDERSON LAW, LLC
2127 Espey Ct, Suite 204
Crofton, Maryland 21114
T: (410) 721-1979
F: (410) 721-2258
wph@hendersonlawllc.com
patrick@hendersonlawllc.com

Attorneys for Plaintiff